IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KELVIN COFER                          §
(TDCJ No. 1671039),                   §
                                      §
          Petitioner,                 §
                                      §
V.                                    §          No. 3:13-cv-5006-D-BN
                                      §
WILLIAM STEPHENS, Director,           §
Texas Department of Criminal Justice, §
Correctional Institutions Division,   §
                                      §
          Respondent.                 §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Kelvin Cofer, a Texas prisoner, proceeding *pro se*, has filed an

application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons

explained below, the application should be denied.

**Background**

On July 17, 2009, after Petitioner pleading guilty to aggravated robbery with a

deadly weapon, a firearm, pursuant to a plea bargain agreement, the trial court

deferred adjudicating guilt and, instead, sentenced Petitioner to seven years'

community supervision. *See State v. Cofer*, F-09-00782-R (265th Jud. Dist. Ct. Dallas

County, Tex.); *see also* Dkt. No. 11-14 at 10-23. The State later moved to revoke

Petitioner's deferred adjudication, however, because (1) two urine samples that

Petitioner provided tested positive for PCP; (2) Petitioner failed to pay, as directed,

probation fees, Crime Stoppers, and urinalysis fees; and (3) Petitioner failed to perform

Community Service Hours as directed. *See id.* at 26-27. Petitioner pleaded true to the allegations in the State's revocation motion, *see id.* at 28-29, and he was sentenced to 15 years' imprisonment on September 17, 2010, *see id.* at 30-31.

Petitioner's adjudication of guilt was affirmed by the Dallas Court of Appeals. *See Cofer v. State*, No. 05-11-010070-CR, 2012 WL 639448 (Tex. App. – Dallas Feb. 29, 2012). The Texas Court of Criminal Appeals (the "TCCA") denied his petition for discretionary review. *See Cofer v. State*, PD-0435-12 (Tex. Crim. App. June 25, 2012). And, after remanding to the trial court to "make findings of fact and conclusions of law as to whether the performance of [Petitioner's] adjudication counsel was deficient and, if so, whether counsel's deficient performance prejudiced [Petitioner]," *Ex parte Cofer*, No. WR-79,032-01, 2013 WL 750127 (Tex. Crim. App. Feb. 27, 2013) (per curiam), the TCCA denied Petitioner's state habeas application without written order on the findings of the trial court made without a live hearing, *see Ex parte Cofer*, No. WR-79,032-01 (Tex. Crim. App. Oct. 9, 2013); *see also* Dkt. No. 11-24 at 2; Dkt. No. 11-24 at 5-13 (state habeas court findings of fact and conclusions of law and supporting and related materials).

Through his federal habeas application, timely filed before December 26, 2013, *see* Dkt. No. 3 at13-15, Petitioner asserts that (1) the trial court abused its discretion when it revoked his probation, (2) the trial court abused its discretion in adjudicating him guilty, and (3) his adjudication counsel was constitutionally ineffective, *see* Dkt. Nos. 3 & 4.

**Legal Standards**

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA, prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is

-4-

– that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*,

274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98
("[D]etermining whether a state court's decision resulted from an unreasonable legal
or factual conclusion does not require that there be an opinion from the state court
explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th
Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a
state court's 'decision,' and not the written opinion explaining that decision"(quoting
*Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state
court rulings, which demands that state-court decisions be given the benefit of the
doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a
petitioner must show that "there was no reasonable basis for the state court to deny
relief." *Harrington*, 562 U.S. at 98.

## Analysis

### I.   Petitioner's claims that the trial court abused its discretion – construed as claims that he was not afforded sufficient due process during the proceeding revoking his community supervision and adjudicating his guilt – are without merit.

Petitioner's claims that the trial court abused its discretion as to its revocation
of his community supervision were addressed by the Dallas Court of Appeals on direct
appeal:

### Applicable Law

Appellate review of an order revoking community supervision is limited
to determining whether the trial court abused its discretion. *See Rickels
v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App.2006). An order revoking
community supervision must be supported by a preponderance of the

evidence, meaning the greater weight of the credible evidence that would create a reasonable belief that the defendant has violated a condition of probation. *Id.* at 763–64. A finding of a single violation of community supervision is sufficient to support revocation. *See Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980). Thus, in order to prevail on appeal, appellant must successfully challenge all the findings that support the revocation order. *See Jones v. State*, 571 S.W.2d 191, 193–94 (Tex. Crim. App. [Panel Op.] 1978).

### Discussion

In his first issue, appellant contends the trial court abused its discretion by revoking his community supervision and adjudicating his guilt because the evidence is insufficient to prove he violated the conditions of his community supervision. In his second issue, appellant contends the trial court abused its discretion in revoking his community supervision because it did not inquire into the reasons he failed to pay fees as alleged in the motion to adjudicate. The State responds that the trial court did not abuse its discretion by finding appellant violated the conditions of community supervision and revoking his community supervision.

Appellant pleaded true to violating the conditions of community supervision as alleged in the motion to adjudicate. A plea of true, standing alone, is sufficient to support revocation of community supervision. *See Cole v. State*, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.] 1979). During his testimony, appellant admitted he used PCP while on community supervision. We conclude the evidence is sufficient to support the revocation of community supervision on this ground. Thus, we overrule appellant's first issue and we need not address appellant's second issue.

We affirm the trial court's judgment adjudicating guilt.

*Cofer*, 2012 WL 639448, at *1-*2.

By casting his claims as "the trial court abused its discretion," it appears that Petitioner is requesting that this Court review *de novo* the trial court's actions, already affirmed on appeal – which is outside the scope of federal habeas review. *See Bagley v. Collins*, 1 F.3d 378, 380 n.2 (5th Cir. 1993) ("A petitioner for habeas corpus relief

must 'establish that the trial error was not merely an abuse of discretion, but was so grave as to amount to a denial of his constitutional right to substantive due process: that is, that the error made the trial fundamentally unfair.'" (quoting *Kirkpatrick v. Blackburn*, 777 F.2d 272, 279 (5th Cir. 1985) (footnotes omitted))); *Hernandez v. Quarterman*, No. 3:06-cv-846-P, 2008 WL 2097161, at *6 (N.D. Tex. May 19, 2008) ("In federal habeas proceedings the court does not sit in review of a state court's interpretation of its own law.... Federal habeas review of trial error is [instead] limited to whether the error so infected the trial with unfairness as to deny due process." (citing *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995); *Donnelly v. DeChristofero*, 416 U.S. 637, 642 (1974))); *Gilbert v. Thaler*, No. 3:11-cv-2022-O-BD, 2012 WL 4463779, at *5 (N.D. Tex. Feb. 12, 2012) ("Although couched in due process terms, petitioner cites no federal authority to support his entitlement to habeas relief. Instead, this claim involves the misapplication state law, which is not cognizable in a federal habeas proceeding." (citing *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999) (footnote omitted))), *rec. adopted*, 2012 WL 4468195 (N.D. Tex. Sept. 27, 2012).

But Petitioner also asserts that the adjudication of guilt violated his federal constitutional rights. *See* Dkt. No. 3 at 6; Dkt. No. 4 at 10, 13, & 15-16. And the undersigned concludes that his claims against the trial court should be addressed in the context of due process given that, although, in affirming the revocation of his community service, the Dallas Court of Appeals did not address a constitutional claim, it appears that Petitioner invoked "fundamental fairness [under] the Fourteenth

Amendment to the United States Constitution" in his appellate brief, *see* Dkt. No. 11-13 at 3, and in his petition for discretionary review to the TCCA, *see* Dkt. No. 11-1 at 18.

Moreover, to the extent that Petitioner has not exhausted a constitutional claim, "under 28 U.S.C. § 2254(b)(2), a federal petition for a writ of habeas corpus may be denied on its merits, notwithstanding the petitioner's failure to exhaust state court remedies." *Hernandez*, 2008 WL 2097161, at *5; *see also Neville v. Dretke*, 423 F.3d 474, 482 (5th Cir. 2005) ("AEDPA retained [the] 'total exhaustion' requirement[, established in *Rose v. Lundy*, 455 U.S. 509 (1982),] as prerequisite for a district court to *grant* a petition. However, consistent with its goal of providing for the speedy resolution of federal petitions, AEPDA provides that applications may be denied on the merits, 'notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.'" (quoting 28 U.S.C. § 2254(b)(2)) (citations omitted and emphasis in original)); *Hernandez*, 2008 WL 2097161, at *5 (determining that a federal due process claim was procedurally defaulted but then choosing to address the claim on the merits, under Section 2254(b)(2)).

> [Petitioner's] placement on deferred adjudication... is a type of pre-judgment probation in Texas. In contrast to regular probation, in which a defendant is found guilty and sentenced to probation, deferred adjudication means that a judge "may, after receiving a plea of guilty or plea of *nolo contendere*, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on [community supervision]." TEX. CODE CRIM. PROC. 42.12 § 5(a); *see also* 4 TEXAS CRIMINAL PRACTICE GUIDE § 82.02 (Frank Maloney, *et al.* eds.) (distinguishing the types of probation or community supervision). If the term of deferred-adjudication [community supervision] is successfully

completed, then the proceedings are dismissed and the defendant is discharged. *See* TEX. CODE CRIM. PROC. 42.12 § 5(c). If the defendant fails to comply with the conditions of his release on deferred-adjudication supervision, however, the trial court may hold a hearing to determine whether it should proceed to adjudicate his guilt. *See* TEX. CODE CRIM. PROC. 42.12 § 5(b).

*Williams v. Dretke*, No. Civ. A. H-05-1735, 2006 WL 492404, at *9 (S.D. Tex. Feb. 28, 2006). As now-Senior United States District Judge Nancy F. Atlas noted in *Williams*,

> [t]he precise level of due process required for the hearing and related proceedings on revocation of deferred-adjudication [community supervision] is unclear. Where the revocation of regular probation is concerned, the United States Supreme Court has decided that a defendant is not entitled to the full panoply of rights that apply in a criminal prosecution. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973). In that context, it is settled that revocation proceedings need only meet the "minimum requirements of due process" by providing the following procedural safeguards:
>
> > 1. written notice of claimed violations of probation;
> > 2. disclosure to the probationer of evidence against him;
> > 3. opportunity to be heard in person and to present witnesses and documentary evidence;
> > 4. the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds a good cause for not allowing confrontation);
> > 5. a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and
> > 6. a written statement by the fact finders as to the evidence relied on and reasons for revoking probation.

*Id.* at *10 (quoting *Gagnon*, 411 U.S. at 781 (in turn quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972))) (citing *Williams v. Johnson*, 171 F.3d 300, 304 (5th Cir. 1999)).

Judge Atlas then determined – and the undersigned agrees – that these criteria should be applied "to the deferred-adjudication [community supervision] revocation in issue." *Id.*; *see also Douglas v. Thaler*, No. 4:12-cv-528-A, 2012 WL 6619475, at *5 (N.D.

-10-

Tex. Dec. 19, 2012) ("Nor does revocation of community supervision require proof sufficient to sustain a criminal conviction. To warrant revocation, the state need only establish by a preponderance of the evidence that a probationer violated the terms of his probation – i.e., his conduct has not been as good as required by the conditions of probation." (citations omitted)); *Player v. Quarterman*, No. 3:05-cv-2119-N, 2006 WL 2601678, at *3 (N.D. Tex. Sept. 11, 2006) ("Player's claims raise a constitutional issue because the Due Process Clause of the Fourteenth Amendment affords a defendant minimal protections in a probation revocation hearing. However, in Texas, probation revocation proceedings are considered administrative in nature and are not subject to the reasonable doubt standard. To warrant revocation, the State need only establish by a preponderance of the evidence that a defendant violated the terms of his probation. Thus, a trial court's decision to adjudicate a defendant's guilt comports with the Due Process Clause of the Fourteenth Amendment unless the decision is totally devoid of evidentiary support." (citations and internal quotation marks omitted)).

Here, Petitioner was afforded sufficient procedural safeguards during the revocation/adjudication proceeding to overcome any due process challenge that he now brings to this Court. His community supervision/deferred adjudication was only revoked, pursuant to a written judgment adjudicating guilt, *see* Dkt. No. 11-14 at 30-31, after issuance of a written violation notice and written motion to revoke, *see id.* at 25-27; after he pleaded true to a written judicial confession, *see id.* at 28-29; and after a hearing before the trial court at which he was represented by counsel, *see* Dkt. No. 11-20.

The record evidence further demonstrates, importantly, that when Petitioner pleaded guilty on July 17, 2009 and when he pleaded true to the State's motion on September 17, 2010, he entered those pleas intelligently and voluntarily and was fully aware of the consequences of both pleas. *See* Dkt. No. 11-19 at 3-7 (guilty plea testimony, in which Petitioner confirmed he understood the range of punishment for the offense, waived his right to trial by jury, and confirmed that he was "entering the plea freely and voluntarily" because he was "guilty and for no other reason"); Dkt. No. 11-20 at 3-5 ("Are you entering the plea of true to the allegations because they are true, you did violate your probation?" "Yes, sir."); *see also Martin v. Director, TDCJ-ID*, No. 1:12-cv-166, 2014 WL 1813309, at *4 (E.D. Tex. May 2, 2014) ("When a defendant enters a plea of guilty to a criminal offense, the trial record must affirmatively show that the guilty plea was intelligently and voluntarily entered. Neither the United States Supreme Court nor the Fifth Circuit has fully delineated the constitutional standards, if any, that apply to a plea of true during a proceeding to revoke placement on community supervision. District courts within this circuit have assumed that the record from a revocation proceeding must show that a plea of true was both voluntary and intelligent. A plea is considered to be intelligent if it is clear that the defendant was fully aware of the direct consequences of his plea at the time it was entered, though he need not have understood the 'technical legal effect' of the plea. A plea is voluntary unless it is induced by threats, improper promises, deception, or misrepresentation." (citations omitted)).

**II.  Petitioner has not shown that the state court unreasonably determined that his revocation/adjudication counsel did not provide constitutionally ineffective assistance.**

The Court reviews Petitioner's Sixth Amendment claim under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 133 S. Ct. 1584 (2013).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent

counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Ineffective-assistance-of-counsel ("IAC") claims are considered mixed questions

of law and fact and, therefore, are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review Petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403, 1410 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, the AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.

Petitioner contends that (1) he only pleaded true to the allegations in the revocation motion because counsel promised him that he would receive drug treatment and (2) because he pleaded true, he was prejudiced since the State was not required to prove its case against him. *Compare* Dkt. No. 3 at 9 (federal habeas application)

-15-

("Petitioner claims that his trial counsel failed to challenge the state's claims that he violated his probation by willfully refusing to not pay his fees, fines, and Crime Stopper fees. She did not give sound advice by having petitioner plea true to the changes in the state's affidavit. Trial counsel failed to present mitigating evidence that petitioner had made efforts to pay."), *with* Dkt. No. 11-21 at 13-14 (state habeas application) ("The petitioner on request of his Attorney entered a plea of true to the allegations on belief that he would obtain a ruling from the Court that he be placed in a substance abuse treatment facility.... Since the attorney had the defendant plea true to the allegations[,] the State's case was not proven beyond a preponderance of the evidence. No adversarial testing was done to make the State prove the allegations of their case. Had petitioner known that no Plea Bargain was secured for him he would not have pled true to the allegations that he violated the conditions of his probation as ordered by the Court.").

Respondent contends that an aspect of Petitioner's ineffective-assistance-of-counsel claim presented to this Court – "any allegation that his trial counsel should have presented mitigating evidence to rebut the State's claims" – is unexhausted. Dkt. No. 12 at 8-12. While the statement of Petitioner's IAC claim in the federal habeas petition does not mirror the statement of the same claim in his state habeas petition, the undersigned reads "mitigating evidence that petitioner had made efforts to pay" as being within Petitioner's state habeas claim that counsel was ineffective because her advice to plead true prevented Petitioner from forcing that "the State prove the allegations of their case." Thus, exhaustion does not appear to be an issue for this

Court to consider.

As to the merits of the IAC claim, the state habeas court obtained an affidavit from Petitioner's revocation/adjudication counsel, Elizabeth "Libby" Smith, *see* Dkt. No. 11-24 at 8-10, and first found that "Ms. Smith is a trustworthy," *id.* at 6; *see Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts." (citations omitted)). The state habeas court then made the following findings of fact and conclusions of law:

> Ms. Smith did not promise [Petitioner] that he would receive drug treatment in exchange for a plea of true to the allegations in the motion to adjudicate.
>
> Ms. Smith presented as much mitigating evidence as she could ethically present. Additional evidence could not be presented once [Petitioner] testified in opposition to the evidence Ms. Smith gathered.
>
> Ms. Smith states that the plea bargain offer from the State was 30 years. She presented enough favorable evidence that the Court only sentenced [Petitioner] to 15 years.
>
> [Petitioner] has failed to prove that he received ineffective assistance of counsel. [Petitioner] did not prove that counsel's representation fell below an objective standard of reasonableness. Nor did he prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have differed.
>
> [Petitioner] has not been denied any of the rights guaranteed him by the United States Constitution or the Texas Constitution.

Dkt. No. 11-24 at 6.

In light of the state habeas court's findings and this Court's review of the state court record, Petitioner has failed to show that the state court's conclusion amounts "to

an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013).

## Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 20, 2015

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-18-